We'll hear argument next in Whitaker v. Department of Commerce 18-2819 Please proceed Your Honors, I am Kel McClanahan for the appellant. This is a fairly simple case, despite all of the trappings around it that look complicated. As noted by AT&T in its public comment back in one of the initial FirstNet rulemakings, which you can find on page 47 of the Joint Appendix, Congress charged FirstNet with connecting every law enforcement official to every other one. And to do this, Congress gave it all incidental powers as it may deem necessary, appropriate, or advisable to accomplish the purposes of this act. Despite this, and despite the clear statutory interpretation, FirstNet and AT&T are now arguing that they must be allowed to operate entirely in the dark with no transparency through public records access or privacy protections besides whatever they agree to in a secret contract. This is not the way that our government is set up. And this case is primarily about two issues of pure statutory interpretation and one basic evidentiary issue. Is FirstNet subject to FOIA and is the National Public Service Broadband Network that FirstNet and AT&T operates required to do a privacy impact assessment? On the FOIA issue, Congress did not intend to exempt an entire agency from FOIA as a side effect. Even AT&T acknowledges or acknowledged back in the day that FirstNet is exempt from the APA's procedural requirements, but not its judicial review provisions. Their entire case hangs on the fact that FOIA used to be part of the APA back when it was first written. And this ignores decades of separate evolution. But a court cannot read a statute in such a way as to make it nonsensical. The FirstNet statute says that it's, that FirstNet's actions taken and decisions made are not subject to Chapter 5 of Title 5. But FOIA does not apply to actions taken or decisions made. It applies to information and records. Moreover, the strong presumption of judicial review of agency actions compels this reading, especially when you see the two basic statutory interpretation canons, no situa associates and reverse eustim generis, that basically point out that the FirstNet statute says commonly known as the Administrative Procedure Act after Chapter 5 of Title 5. And FOIA Did FirstNet not make a decision? Pardon me? Isn't it correct that FirstNet decided not to provide documents? Isn't that one way to look at what it did here? I mean, you make an argument about the words action or decision, and you say that FOIA applies to documents. But in every instance relating to FOIA, there is a decision or action made by the agency, by whatever entity is the subject of the FOIA request. If you read it that way, then you basically remove action taken or decision made and make it mere surplisage, which, with respect, the law does not allow. The I'm not even sure what that means. I'm not sure what you mean. If you say that action taken or decision made means everything because someone decided Isn't it decision made when somebody says that, you know, is asked to produce something under FOIA, and then they don't do it or they do do it in a limited way? Isn't that a decision? Down the line, I would say that is the case. But the FOIA statute talks about what information is required to be made public, not what agency decisions are required to be made. Oh, but we were talking about here is an exemption, right? Granted, FOIA looks for documents, but they also there's a question about how the agency reacts when such a decision is made, when such a request is made. And it's then a decision by the agency to comply, not a decision. Then the Open FOIA Act of 2009 says that an exemption made after this date must cite to FOIA. And the FirstNet statute did not. And so that's all I have on the FOIA issue. Unless anyone has any questions, I would like to move on to the PIA issue. So as DOJ said in its PIA guidance, for the purposes of a PIA is to ensure that privacy protections are built into the system from the start and not after the fact when they can be more costly or could affect the viability of the project. It is to give the public notice of this analysis and help promote trust between the public and the department. This is pretty clear. At least we maintain that this is clear. And yet the arguments being made here and the argument relied on by the district court, which is a different argument than the argument being made today, is that at the very least it's premature for you to decide this because allegedly as of the time of this decision, the NPSBN was non-operational. As an initial matter, we're not even sure if that's the case anymore, because no one has provided information saying that it's still non-operational. And the judge, Judge Crawford, solely based his decision on that. So you would be well within your rights to remand it on the grounds that now that it's operational or now that the evidence suggests it's operational, he must do a new fact finding. But moreover, the fact that it was allegedly non-operational and the arguments being made by AT&T and to a lesser degree FirstNet, that this is something that AT&T runs and not FirstNet, are based on inadmissible evidence. They're based on a secret contract between AT&T and FirstNet that they refused to turn over, but which they kept summarizing in the Madison Declaration. And that violates the best evidence rule. And my time is up, so I will reserve the rest until my rebuttal. Thank you. Good afternoon. May it please the Court, Laura Myron for the government. I'd like to make two quick points, first on the action taken or decision made question. It's fairly clear that Congress exempted, excuse me, FirstNet from the requirements of Chapter 5 of Title V, and there's nothing in the language, any action taken or decision made, which is, as noted, quite broad, that would render that reference to Chapter V of Title V except for FOIA. So there's really no reason to conclude that FirstNet here is not subject to FOIA. What about the language in 552b3 that requires a specific reference to the Open FOIA Act of 2009? So if an agency was withholding documents under the exemption in b3, then Congress has said that, excuse me, it must do so under a statute that specifically refers to b3, but that's not the situation we have here. What we have here is a general exemption of the entire agency of all of the requirements of FOIA, not just its response to requests, but also the various provisions that govern how agencies make public certain information or, you know, conduct other things related to the publication of information in the Federal Register and on their websites in various places. So this is not a withholding under the statutory authority in b3, so there's no reason that Congress would have referred to it in its exemption. And we've referred to the New York Times case as an example of a b3 holding that might look like that. Thank you. And on the second point about the operability of the network and the privacy impact assessment, as plaintiffs have noted in their opening brief, the operability of the network is not relevant to the inquiry before this Court. The district court concluded that plaintiffs had no standing because they had asserted an informational injury, which does not give rise to Article III standing under the Supreme Court's cases, Spokio v. Robbins, and also this Court's subsequent cases in Paris Baguette. And there's no reason that that analysis would not also apply to the network, which similarly plaintiffs have not asserted a specific concrete injury related to their privacy interests on the network, but rather an informational injury that, you know, potentially could give rise to the Article III standing, but as this Court has said and the Supreme Court has said, does not because it does not get at the concrete interest Congress meant to protect, which in note, excuse me, 44 U.S.C. 3501 note, the purpose of the provision is to ensure sufficient protections for the privacy of personal information, not to ensure the publication of privacy impact assessments for people to consider. So what kind of enforcement mechanism is there to ensure conformity to the PIA? Well, in a different case, there would be presumably individuals who do have personal identifying information that might be subject to collection by an agency and they would have standing if they've identified that their personal information might be subject to collection by the government and no privacy impact assessment has arisen. But in this case, and as we've noted in our brief, because the collection of information here is conducted by a private third party, not by the government, there's no obligation on the government to engage in the privacy impact assessment under Section 208 because it's not engaging in the kind of collection of information that might give rise to that statutory obligation. So even when the contractor is acting on behalf of the government pursuant to governmental purposes, it doesn't have any obligation to treat personally identifiable information with care and explain how it's going to use the information? We're not suggesting that the government might be able to contract around its collection of information if the statutory scheme sets up a scheme in which the government is intended to itself collect information and it delegates that to a third party. But that's not the statutory scheme you have here. What you have here is a scheme in which the government's only responsibility is to contract, to set up a contract for the deployment and maintenance of this network. The government itself will never see any of the information that might be sent across the network. The network is itself encrypted, so there's no reason to think that any government entity would engage in the collection, maintenance, or of information that might give rise to a Section 208 obligation. Would you address the adequacy of the affidavits? Yes, Your Honor. With regard to the futility of the search point, certainly. So the question before this Court is whether the agency's response was reasonable in light of the specific requests that the FOIA requester had submitted. And if you look at the affidavits on page 92 and 93 of the record, and also 123 of the record, what the agency does is walk through the specific requests that came in with regard to, several of them are related to documents that would be specifically within the FirstNet state plan portal. So, for example, user comments, state correspondence with regard to decisions to opt in or opt out. And the agency says, we did not have access to the state plan portal at the time that the request came in, and FOIA requests do ask for agencies to produce records in their possession at the time of the request. And we've considered that there were some instances in which our staff members had access to the portal, which is a closed system with limited credentialed access, but under those circumstances, they did not download a copy, take screenshots, print information, anything that would lead to our having So, Judge Crawford, I think asks a question along these lines. You know, you could have an affidavit that was less conclusory and more detailed. And here, at least with respect to one of the requests, the NTIA affidavit says, effectively, we're not a part of the contract, we're not required to approve the contract, and FirstNet maintains its own information systems, and that's why we don't need to conduct an adequate search. Why? Provide me with some analysis that I could embrace as to why that is sufficient to support the futility of a search. Sure, Your Honor. So FirstNet is an independent authority within the Department of Commerce. It does not, with a few limited, not relevant exceptions, need approval from NTIA or the Department of Commerce to take action or make decisions. And there's no other statutory obligations, except for some that we've noted that are not relevant to this question, for them to provide NTIA or the Department of Commerce with various documents that might be responsive to the FOIA request at issue. So given that the FOIA request specifically asked NTIA to consider the records within its possession, it said in response, these are FirstNet records, they are within the State plan portal, they concern a contract exclusively between FirstNet and AT&T that we have no reason to think FirstNet would have shared with us, and so we do not have in our possession at this time the records of this nature, and there's no reason that we would search our databases for something that's not going to turn up. And I don't think there's any question that where there is a conclusion that there's no reasonable likelihood that the records would be present, that the agency must conduct a futile search. Well, just Crawford relied on the absence of any showing of a lack of good faith, right? Yes, Your Honor. But after he had made a decision that the agency had met its burden under Grand Central Partnership, that it had submitted non-conclusory detailed declarations that supported the conclude that the agency's response had been reasonable, there is then an opportunity for the plaintiffs to demonstrate that for some reason the affidavits had not been made in good faith, and that's where the finding comes in. All right. Thank you very much. Thank you. Your Honor, I'm going to go to the question that you just asked, because that is the core of that dispute, and I apologize if I didn't hit that topic before. I rest on my briefs for most of that, and I didn't want to use my time for that. The judge did, in fact, say that we did not prove good faith. But he went straight to that, and that was our main problem with these declarations. It may be that if they did searches, some of these requests, or maybe all of them, wouldn't yield any responsive records. However, that it would be futile is a very high bar in the law. And as I showed in our briefs from all the examples where this has been used before. Doesn't simple logic sort of compel the conclusion that, you know, these records are vast. I mean, you know, there's a tremendous amount of work that would have to go into the search. And if there's a substantial reason to believe that they would yield nothing, why isn't that sufficient? Because substantial reason is not the standard. It is. It isn't. But if there's good reason to think, based upon the way activities were conducted, why would you force the taxpayers to pay for those, for a search like this? Two reasons. Number one, if there was good reason to believe it, it is not in the record. This is partially an evidentiary issue. These were very conclusory affidavits. And, in fact, they are contradicted by the responses at the time, which were, these are FirstNet records, and therefore we are referring it to FirstNet. All of these explanations that she has given you today were created after we went to court. And there's no evidence in the record that anyone did this kind of analysis at the time. So you may be right, and they may be able to justify it, but they did not in this case. Scalia. Well, what are you asking us to do with respect to this? Kennedy. To find that the evidence did not support a grant of summary judgment, because all inferences must be drawn in favor of the nonmoving party, which was us. Well, if the records are, if the affidavits are inconclusive, couldn't they, couldn't they go back for further work on that question? That would be a remand. Whether the affidavits could be made more conclusive. Yes, or whether or not they have met their, basically it would be a remand for them to make another attempt to justify it, and if they still fail to give sufficient evidence, then they get denied summary judgment. Is that what the standard is, sufficient evidence? Well, they have to prove. But forget the summary judgment. What is the standard with respect to how I'm supposed to assess these affidavits? All inferences must be made in favor of the nonmoving party. Well, that's a summary judgment standard. What is the standard, statutory standard, pursuant to which I'm supposed to assess the adequacy of these affidavits which say we don't need to do a search because X, Y, and Z? There is no statutory standard. The case law standard is that it is not reasonably likely that any search would yield any records. It is a high bar. It is not whether or not they had reason. It is not more often than not it would be futile. It is they are not likely to have to. Okay, so an affidavit that says we have nothing to do with this company in the sense that they've got all the records. Is that enough? If they said that we have nothing to do with it, we would actually accept that. They did not say that. They said the law does not require them to give us records, so we're going to assume that we have no records. Well, that's not quite what they said, but okay. All right. Well, thank you very much. Can I hit one point on the PIA issue? I think we've got your argument well in hand, and thank you very much. We'll reserve decision. Thank you. Court is adjourned. One minute to start.